## Burkhard v. Mitchell.

A Lease Given by an Agent and Ratified by His Principal Cannot Be Repudiated.— Where an owner gives his agent authority to rent his premises, and it is not shown whether the authority of the agent as to the length of the lease was limited or not, and the agent leases for two years, while the owner claims that he had no authority to execute a lease for more than a year, but notwithstanding accepts rent from the tenants for four months after the end of the first year, he thereby ratifies the lease for the entire term, and cannot demand a higher rent for the balance of the term, and oust the tenant for refusal to pay it.

*Appeal from Las Animas County Court.*

Mr. James M. John, for appellant.

Mr. J. H. Croxton, for appellee.

Bissell, C. Mitchell instituted these proceedings in forcible entry and detainer against Burkhard, to recover possession of certain premises in Trinidad. The trial resulted in a judgment in favor of the owner for the possession, and

for the rent for the months of November, December and January. The November rent was found to be $75, and that for the two succeeding months $100. This amount of rent was not fixed by any specific agreement. The controversy was as to what, if any, tenancy had resulted, by operation of law, from what had been done by the parties.

In June, 1884, Mitchell was the owner of the premises, and at that time was evidently indebted to the firm of John & Gunter in a very considerable sum of money. To secure this indebtedness, and provide means for its payment, he assigned all rents and profits of the property for two years; and by due power authorized them, upon such terms as to price and parties as to them might seem proper, to lease the premises and collect the rents. By some stipulation, which does not appear, Mitchell continued this authority after June, 1886, the date named in the original power. He admits that they had such authority up to August 1, 1887, and concedes that they rented the premises, and collected the rent, by his consent, to that time. Whether there was, in the extension, any specific limitation of time which would, *ex vi termini*, terminate their power on that date, is not shown. Mitchell simply concedes the existence of the power during 1887, shows the liquidation of his debt August 1st, and insists that the power ceased on that date. July 24, 1886, while the authority of John & Gunter was in force, they leased the premises to Burkhard for two years, at a monthly rental of $40, payable at the end of each month. The tenant went into possession under the lease, and paid his rent to John & Gunter to July 1, 1887. During that time no question was made as to his tenancy, or as to the rental. Whether Mitchell had actual notice of the existence of the lease which had been made by John & Gunter cannot be learned from the record. On the 1st of August, when the obligation to John & Gunter was paid off and the property came back under the owner's control, he went for his rent

for July, and was tendered the $40 stipulated for in the lease. He received the money, but protested that the rent was an inadequate price, and contended that John & Gunter had no authority to lease the premises beyond August 1, 1887. At that time he received full notice of the lease, its duration and terms. Without other or further objection, he continued to receive the rent each month, according to the terms of the agreement which had been made between Burkhard and John & Gunter, till the 1st of November, 1887, when he served the notice to quit, which initiated these proceedings. By this notice he attempted to force the tenant to vacate the premises or pay a rent of $75 for November. This notice seems to have been abandoned, and another was served a few days later for the same purpose, which fixed the rent at $100 for the month of December. In rendering judgment the court held the defendant liable to pay the rent named in these two notices, and entered judgment of ouster and for the sum of $275.

Manifestly, the judgment was entered without a correct conception of the relations and legal rights of the parties.

At the time John & Gunter leased the premises to Burkhard they had ample authority to act. Possibly the authority is not to be found in the instrument which originally granted it, but the plaintiff concedes that it continued during the entire year following the date named in the letter of attorney. Whether it was continued by express letter of extension, or by tacit or verbal concession, can make no difference. If the power was conferred, as the plaintiff proved when establishing his own case, the lease made by John & Gunter was operative, and legally binding on the owner of the premises at the time of its execution. The estate was granted, and Burkhard thereby acquired the right to enjoy it for the term named, and at the rental specified. This cannot be disputed, except upon the hypothesis that, as the power was only extended for one year, the lease could not

be granted by the firm for a time exceeding the limit named in their authority. This might be true if there was a limit expressed, and the person dealing with the agent had notice of the limitation placed on the general authority, or if he was bound before dealing with him to ascertain what authority the agent had. But the plaintiff failed to show any such restriction on the general authority to rent, which he admits the agent had. It must be conceded to be the law that, if the agent have general authority to lease, his contracts will bind his principal. When it was admitted that John & Gunter had a general authority to lease during the year 1887, when the contract was made, it was incumbent on the plaintiff who proved it to show that the authority was limited as to time, and that the defendant either had notice of the restriction, or was chargeable with knowledge of it. The power of the firm over the matter of leases and rents was apparently absolute. The property was, and for several years had been, under their exclusive control, with the right to lease, collect the rents, and appropriate the money. Such authority is wholly inconsistent with any limitation which would defeat contracts of lease into which they might enter. It is plain, on any theory, that the lease as executed was good from July, 1886, to July, 1887. The proof offered by Mitchell was of a right to lease to August 1, 1887. He made no question that the lease was good to that date. It then was a good contract of lease at $40 per month for one year. What followed rendered it a good lease for another year, and the original contract of John & Gunter was effectuated, and the defendant was entitled to stay his term out. On the 1st of August, when Mitchell came for the July rent, he was tendered the $40. He demurred, and protested that he ought to have more rent, but he accepted it. Without protest he took the rent for August, September and October. The legal result of this conduct is the creation of a new lease for another year at $40 per month.

The original lease of John & Gunter was admitted good

for a year. When the year expired which terminated the contract, it was capable of legal, as well as contractual, renewal. Assuming that the lease was valid only for the term ending on the 1st of August, if the tenant held over and paid the rent, he became, by virtue of the application of a well-established principle of the law of landlord and tenant, a tenant for a year, upon the same terms and conditions that measured and defined his leasehold estate for the preceding year. *Sears v. Smith*, 3 Colo. 288; *Reithman v. Brandenburg*, 7 Colo. 481; *Zippar v. Reppy*, 15 Colo. 260.

It was not possible for Mitchell to receive his rent, and continue the tenancy in the manner he did, without subjecting his premises to the burden of the lease for another year.

The plaintiff's conduct was likewise, in legal effect, a ratification of the contract made by his agents. The premises were, for at least a year, in the occupation of the tenant, who was paying the stipulated rent from month to month. Whether this rent was turned over to the principal by the agents, or was applied by them in the discharge of the principal's debt, in either event knowledge of the tenancy, and its terms, must presumably have come to his knowledge long before the 1st of August, 1887. On that date he certainly knew of it, because it is in evidence that it was then shown to him. He continued to receive the rent for at least four months, according to the terms of the contract as made by his agents. The receipts which he gave are in the usual form, and are without restriction or exception of any sort. It does not appear that after the 1st of August he made any objection whatever to the lease, or to the tenancy as asserted by the tenant. According to all reasonable rules, this must be held a ratification of the contract. A principal cannot acquiesce in the unauthorized contract of his agent, accept its benefits, and escape the responsibility of its obligations.

In whatever aspect the case is viewed, the contract of lease was a valid one, and afforded a perfect defense to the action.

The judgment should be reversed and the cause remanded.

RICHMOND and REED, CC., concur.

PER CURIAM. For the reasons stated in the foregoing opinion the judgment is reversed.

*Reversed.*